FILED
United States Court of Appeals
Tenth Circuit

June 3, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LEHMAN SMITH,

Defendant-Appellant.

No. 09-2040

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. CR-1:07-00791-MCA-1)**

---

Mark D. Standridge (Mark D. Jarmie with him on the briefs), Jarmie &
Associates, Albuquerque, New Mexico, for Appellant.

Laura Fashing, Assistant United States Attorney (Gregory J. Fouratt, United
States Attorney, with her on the brief) Office of the United States Attorney,
Albuquerque, New Mexico, for Appellee.

---

Before **BRISCOE**, Chief Judge, **McWILLIAMS**, Senior Circuit Judge, and
**TYMKOVICH**, Circuit Judge.

---

**TYMKOVICH**, Circuit Judge.

---

A jury convicted Lehman Smith of sexual assault, and he was sentenced to 60 months' imprisonment and 36 months of supervised release. Smith appeals his conviction and sentence, raising four pretrial and trial issues: the district court erred by (1) refusing to suppress his confession, (2) admitting hearsay evidence under the excited-utterance exception, (3) finding that evidence sufficient to sustain his conviction was introduced, and (4) imposing special conditions of supervised release restricting his contact with minors and the disabled.

Our jurisdiction arises under 18 U.S.C. §§ 1291 and 3742. We AFFIRM the rulings of the district court.

## I. Background[1]

On March 24, 2007, Smith, an Indian, and the victim, "Jane Doe," both attended a party at a hogan[2] located in the Navajo Nation. They and other attendees at the party consumed beer, and some used drugs. The party broke up after midnight. While everyone else left the hogan, Smith and Jane Doe remained. Jane Doe fell asleep on a couch at around 2:00 a.m.

Jane Doe awoke to find Smith having sex with her. She pushed Smith off, confronted him, and fled the hogan. She sought assistance at a neighbor's trailer, claiming she had been raped. She then called the police. Jane Doe was taken to

---

[1] The factual background is based on the district court's findings and holdings relating to, as well as, the hearing on Smith's motions to suppress, the trial, and Smith's sentencing hearing, respectively.

[2] A type of traditional Navajo dwelling.

an emergency room. DNA samples taken by an examining doctor were later matched to Smith.

That same day, Smith was arrested on charges based on the Navajo tribal code. He was taken to a local jail, where he was advised of his rights and questioned by law enforcement officials, including a member of the FBI. During the interview, Smith confessed to sexually assaulting Jane Doe. He then provided a written statement of confession.

After additional investigation, a federal arrest warrant was obtained for Smith on March 27, 2007. In accordance with that warrant, Smith was transferred into federal custody.

Ultimately, a jury convicted Smith of knowingly engaging and attempting to engage in a sexual act with a person incapable of apprising the nature of the conduct and of communicating unwillingness to engage in the sexual act, in Indian Country, in violation of 18 U.S.C. §§ 1153, 2242(2), and 2246(2)(A). The district court sentenced Smith to 60 months' imprisonment and 36 months of supervised release. The district court also established special conditions of supervised release, limiting Smith's ability to have contact with children and disabled adults.

## II. Discussion

Smith argues the district court made four errors. *First*, he contends the district court should have suppressed his confession because (a) it was not made

knowingly and voluntarily, and (b) he was not promptly taken before a federal magistrate judge. *Second*, he asserts that the district court improperly allowed Jane Doe's statement to the neighbor—"Help me, help me. He raped me."—to be admitted under the excited-utterance exception to the hearsay rule. *Third*, he challenges the district court's conclusion that evidence sufficient to sustain his conviction was presented at trial. *Finally*, Smith seeks reversal of the special conditions of supervised release relating to children and disabled adults that the district court imposed.

We address each contention in turn.

A. The Confession

When reviewing the district court's denial of a motion to suppress, we review legal conclusions de novo and findings of fact for clear error. *See United States v. Grimmett*, 439 F.3d 1263, 1268 (10th Cir. 2006). We view the evidence in the light most favorable to the government. *See id.*

*1. Voluntariness*

Smith first argues his confession should have been suppressed because it was not made knowingly and voluntarily. We do not agree.

According to testimony at the suppression hearing, Smith drank a substantial amount of alcohol, smoked marijuana, and ingested cocaine on Saturday, March 24, 2007. He was last seen consuming those substances sometime before 3:00 a.m. on Sunday, March 25, 2007.

On March 25, at approximately 7:30 a.m., Officer Anthony Ashley of the Navajo Nation Department of Public Safety responded to Smith's residence. Officer Ashley had been told that Smith sexually assaulted Jane Doe and was following up on the victim's call to tribal police. After Smith's grandmother let him into the house, Officer Ashley found Smith asleep and smelling of alcohol. Officer Ashley woke Smith, introduced himself, and arrested Smith on tribal sexual assault charges. During this time, Officer Ashley noticed that Smith spoke to his grandmother clearly and coherently.

Smith was subsequently taken to a local jail. Shortly after 11:00 a.m. that morning, FBI Special Agent Rob Sayegh and Navajo Nation Criminal Investigator Rosina Ford interviewed Smith. The interview took place in a room roughly eight feet by eight feet in size. Smith was not handcuffed during the interview. At the time the interview was conducted, Smith did not appear to be intoxicated and he did not smell of alcohol. In response to some preliminary questions, Smith indicated that he was sober and able to talk, he had been educated through the tenth grade, and he could understand the English language.

At 11:29 a.m., Agent Sayegh read Smith his *Miranda* rights and provided him an advice of rights form to read and sign. Smith signed the form at 11:31 a.m. After signing the form, Smith stated he was willing to answer questions without a lawyer being present.

Throughout the interview, Smith provided clear, responsive, and specific answers to the interviewers' questions. Smith proceeded to confess that he had sexually assaulted the victim. Thereafter, prompted by Agent Sayegh, Smith agreed to make a written statement. Agent Sayegh provided Smith a form upon which he wrote: "What I did was not me. I was not thinking. I was [d]runk. I feel sick of [myself] because of what I did. I had sex with her. I pulled down her pants . . . . I had sex with her for 30 min[utes,] while she was [asleep]." Aple. Br., Ex. 2. Smith signed the form, attesting to both the statement he wrote on it and its pre-printed contents. The pre-printed portions of the form acknowledge that the written statement it contains is true and correct, and was made by Smith after he was advised of his constitutional rights and without pressure or coercion.

The interview ended on March 25 at 12:39 p.m.

Smith moved the district court to suppress his written statement, claiming that he was intoxicated at the time he was apprised of his constitutional rights and that Agent Sayegh coerced his confession by instructing him on what to include in his statement and with promises of leniency. The district court refused to suppress Smith's confession, concluding he knowingly and voluntarily waived his *Miranda* rights and voluntarily made his written statement while sober and coherent. In particular, the district court did not credit witness testimony that Smith consumed at least 20 cans of beer during the party.

A waiver of *Miranda* rights must be made voluntarily, knowingly, and intelligently. *See Smith v. Mullin*, 379 F.3d 919, 932 (10th Cir. 2004). Our inquiry into a waiver's validity has two dimensions:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Id.* (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). In determining whether rights were voluntarily waived, we consider: the suspect's age, intelligence, and education; whether the suspect was informed of his or her rights; the length and nature of the suspect's detention and interrogation; and the use or threat of physical force against the suspect. *See Smith*, 379 F.3d at 934; *United States v. Minjares-Alvarez*, 264 F.3d 980, 985 (10th Cir. 2001).

The same factors are assessed in determining whether a confession was voluntarily given. *See Smith*, 379 F.3d at 934; *Minjares-Alvarez*, 264 F.3d at 984–85. In addition, identifying coercive police activity is a necessary predicate to finding that a confession is not voluntary. *See Smith*, 379 F.3d at 934. Importantly, "[t]he state of intoxication does not automatically render a statement involuntary." *United States v. Muniz*, 1 F.3d 1018, 1022 (10th Cir. 1993). Rather, the test is "whether a [suspect's] will was overborne by the circumstances

-7-

surrounding the giving of a confession." *Dickerson v. United States*, 530 U.S. 428, 434 (2000) (internal quotation marks omitted).

The district court determined that both Smith's waiver of his constitutional rights and confession were valid, and we see no clear error in its finding concerning Smith's mental state. Nothing suggests that Smith was intoxicated, or otherwise incapable of sufficient comprehension, when Agent Sayegh advised him of his *Miranda* rights or when he signed the form acknowledging that he had been apprised of, understood, and waived those rights. At the time Smith waived his constitutional rights, it had been eight and a half hours since he had last been seen drinking, he did not appear intoxicated to the interviewers, he did not smell of alcohol, he stated that he was sober when asked, and he provided clear responses to a substantial number of questions. As to his contention that his *Miranda* waiver was ineffective because he could not read the waiver form without his glasses, at the time of the waiver he did not complain of vision trouble or cognition problems.

The record likewise demonstrates Smith's waiver of his rights was voluntary. When Smith waived his *Miranda* rights, he was nearly 21 years of age and had completed the tenth grade. Smith waived his rights after he had been informed of them both orally by Agent Sayegh and in writing through the advice of rights form. Prior to waiving his rights, Smith had been under arrest for approximately three hours but had not been questioned. The interview took place

in a room large enough to accommodate adequately the interviewers. Smith was not handcuffed during the interview. Additionally, there is no indication in the record that Smith was treated impolitely or touched forcefully while being interviewed.

Based on those same considerations, we conclude that Smith's written confession also was made voluntarily. The record does not demonstrate the law enforcement officers who interviewed Smith used coercion. First, the statements Agent Sayegh made to Smith concerning his confession and the structure of his written statement were not objectively coercive. And, in fact, the written statement form Smith signed states that he was not coerced or pressured in any way. In addition, given the circumstances of Smith's interview, even if it was shown that he was imperceptibly intoxicated at the time, the district court did not clearly err in rejecting the claim that his "will was overborne." *Dickerson*, 530 U.S. at 434.

In sum, the district court did not err in concluding that Smith waived his rights and confessed knowingly, intelligently, and voluntarily.

### 2. Presentment Rule

Smith next contends that his confession should be suppressed because he was not presented to a federal magistrate within six hours of his arrest.

Smith was arrested on tribal charges on Sunday, March 25, 2007, at approximately 7:30 a.m. Agent Sayegh advised Smith of his rights at 11:29 a.m.

and subsequently questioned him. Smith's interview ended at 12:39 p.m. Smith made his confession sometime between 11:29 a.m. and 12:39 p.m. Following Smith's interview, Agent Sayegh conducted some additional investigation before obtaining a federal arrest warrant on Tuesday, March 27, 2007. Based on that warrant, and on the same day it was issued, the Navajo authorities released Smith into federal custody.

Smith moved the district court to suppress his written statement, claiming he was not promptly presented to a neutral and detached judicial officer. The district court denied Smith's motion, ruling that his prompt-presentment argument failed as a matter of law.

Federal law requires an arrestee to be promptly presented to a federal magistrate judge. *See Corley v. United States*, 129 S. Ct. 1558, 1563 (2009). Failure to bring an arrestee before a magistrate promptly may result in the exclusion of a confession. *See id.* at 1571. Guiding the relationship between the requirement of prompt presentment and the consequence of suppression, 18 U.S.C. § 3501(c) provides:

> In any criminal prosecution by the United States . . . , a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate judge or other officer empowered to commit persons charged with offenses against the laws of the United States . . . if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the

jury and *if such confession was made or given by such person within six hours immediately following his arrest . . . .* (emphasis added)

In construing this statute, the Supreme Court recognizes the six-hour period between arrest and confession acts as a safe harbor against claims of improper delay:

> [A] district court with a suppression claim must find whether the defendant confessed within six hours of arrest. If the confession came within that period, it is admissible, subject to the other Rules of Evidence, so long as it was made voluntarily and the weight to be given it is left to the jury. If the confession occurred before [the defendant's] presentment [to a federal magistrate] and beyond six hours, however, the court must decide whether delaying that long was unreasonable or unnecessary under the *McNabb-Mallory* cases, and if it was, the confession is to be suppressed.

*Corley*, 129 S. Ct. at 1571 (internal parenthetical and punctuation omitted).

But the presentment rule does not begin to operate, and the six-hour safe harbor period is not implicated, until a person is arrested for a federal offense. *See United States v. Alvarez-Sanchez*, 511 U.S. 350, 358 (1994). Where a person is under arrest on solely non-federal charges, neither the prompt-presentment rule nor the safe-harbor period are relevant even when the arresting officers believe the person also may have violated federal law or the person makes an inculpatory statement to federal agents. *See id.* at 358–59.

The district court correctly ruled the presentment rule did not support suppressing Smith's confession. First, Smith was not arrested on a federal charge until March 27, 2007. The presentment rule did not become operative until that

-11-

time and therefore it did not bear on Smith's March 25, 2007 arrest and confession.

Second, even if Smith had been arrested for a federal offense on March 25, rather than on a Navajo charge, the presentment rule would not warrant suppression of his written statement, because—at most—five hours and 10 minutes elapsed between Smith's arrest and confession. Smith was arrested at approximately 7:30 a.m. on March 25 and confessed before Agent Sayegh terminated the interview at 12:39 p.m. Thus, had Smith's initial arrest by Officer Ashley implicated the presentment rule, the rule would have been satisfied because Smith made his written statement less than six hours after this arrest.

Accordingly, we find the district court did not err by refusing to suppress Smith's written confession based on the presentment rule.

B. Excited Utterance

Smith next asserts the district court improperly allowed hearsay evidence to be introduced at trial. After realizing she had been sexually assaulted, Jane Doe confronted Smith. An altercation ensued, Jane Doe struck Smith, and then fled the hogan, seeking assistance at a neighbor's trailer. Jane Doe's pounding on the trailer's front door awakened the neighbor at approximately 4:30 a.m. The neighbor answered the door and found Jane Doe crying and screaming—"Help me, help me. He raped me." R. at 536.

Prior to and during trial, Smith sought to exclude as hearsay Jane Doe's statement to the neighbor regarding the assault. The district court allowed the challenged statement to be introduced, determining that it was covered by the excited-utterance exception to the hearsay rule.

We review the district court's admission of evidence over a hearsay objection for abuse of discretion. *See United States v. Pursley*, 577 F.3d 1204, 1220 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1098 (2010). "Due to the fact-specific nature of a hearsay inquiry, the district court's ruling necessitates heightened deference." *Id.* (internal quotation marks omitted).

Hearsay evidence is generally not admissible, *see* FED. R. EVID. 802, but an exception is made for statements relating to a "startling event or condition," *see* FED. R. EVID. 803(2). The so-called "excited-utterance exception has three requirements: (1) a startling event; (2) the statement was made while the declarant was under the stress of the event's excitement; and (3) a nexus between the content of the statement and the event." *Pursley*, 577 F.3d at 1220. "[T]here is no precise amount of time between the event and the statement beyond which the statement cannot qualify as an excited utterance." *United States v. Ledford*, 443 F.3d 702, 711 (10th Cir. 2005). Admissibility hinges on a statement's contemporaneousness with the excitement a startling event causes, not the event itself. *See Pursley*, 577 F.3d at 1221–22.

For a number of reasons, the district court did not abuse its discretion in admitting Jane Doe's statement. First, a *startling event* occurred—the sexual assault. That event was sufficiently supported by Jane Doe's testimony at trial that she was raped, and Smith's confession that he raped Jane Doe.

Second, we have little difficulty concluding Jane Doe was *under the stress* of the assault's excitement when she made the statement. In considering this element,

> [a]mong the more relevant factors are: the amount of time between the event and the statement; the nature of the event; the subject matter of the statement; the age and condition of the declarant; the presence or absence of self-interest; and whether the statement was volunteered or in response to questioning.

*Id.* at 1220. Here, Jane Doe fell asleep in the hogan around 2:00 a.m., Smith sexually assaulted her for 30 minutes, and she made the challenged statement to the neighbor at approximately 4:30 a.m. The record describes a confusing series of events after Jane Doe realized and understood the nature of the assault. Jane Doe confronted Smith, struck him, and eventually received assistance from the neighbor. At the first possible moment to disclose the assault to another person, she made the challenged statement. The neighbor's testimony confirms Jane Doe's demeanor and tone, which were consistent with ongoing stress arising from the assault.

Nor does the passage of time suggest the stress had dissipated. Other courts have found the excited-utterance exception applies where more time

-14-

elapsed between the startling event and the excited statement. For example, in *United States v. Cruz*, 156 F.3d 22 (1st Cir. 1998), the First Circuit held a statement could be admitted as an excited utterance when there was a four-hour delay between a violent domestic altercation and statements made by the victim at a battered women's shelter. *See id.* at 30 (cited with approval in *Pursley*, 577 F.3d at 1221). Similarly, in *United States v. Tocco*, 135 F.3d 116 (2d Cir. 1998), the Second Circuit ruled a statement could be admitted under the excited-utterance exception where three hours passed between the discovery that people were in a burning building and the declarant's statement that he was involved in the arson. *See id.* at 128 (also cited with approval in *Pursley*, 577 F.3d at 1221). And, we have noted that a statement made by a child the day after being molested could have been admitted as an excited utterance where the child was described as frightened and on the verge of tears when the declaration was made. *See United States v. Farley*, 992 F.2d 1122, 1123, 1125–26 (10th Cir. 1993). Here, less than two hours after being raped and only upon escaping from Smith, Jane Doe—still under obvious stress from the attack—made the statement to the neighbor.

Smith suggests Jane Doe lied about the assault to hide what was a consensual sexual encounter from her boyfriend. But that contention is not borne out by the record and is inconsistent with the other evidence of the assault and the circumstances indicating ongoing stress.

Finally, Smith does not contest the obvious nexus between the content of the statement—Jane Doe's utterance—"Help me, help me. He raped me."—and the startling event, her sexual assault.

We cannot conclude therefore that the district court erred by permitting the neighbor's testimony concerning Jane Doe's statement to be introduced at trial.[3] The contested statement was correctly admitted as an excited utterance.

C. Sufficiency of the Evidence

Smith also contends that evidence sufficient to sustain his conviction was not introduced at trial. Our review of the record for sufficiency of the evidence is de novo. *See United States v. Wilson*, 107 F.3d 774, 778 (10th Cir. 1997).

"Evidence is sufficient to support a [] conviction if a reasonable jury could find the defendant guilty beyond a reasonable doubt, given the direct and circumstantial evidence, along with reasonable inferences therefrom, taken in a light most favorable to the government." *United States v. Mains*, 33 F.3d 1222, 1227 (10th Cir. 1994). We consider the collective inferences that can be drawn from the evidence as a whole in assessing the sufficiency of the evidence. *See*

---

[3] Smith also contends admission of the statement violated the Confrontation Clause under the standard enunciated in *Crawford v. Washington*, 541 U.S. 36, 54 (2004). Even if Jane Doe's statement were testimonial—and we do not necessarily agree that it was—Smith's Sixth Amendment argument would fail because Jane Doe testified at trial. *See Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) ("[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.") (emphasis in original).

*Wilson*, 107 F.3d at 778.  We disregard only incredible testimony—"i.e., testimony as to facts that the witness physically could not have possibly observed or events that could not have occurred under the laws of nature."  *Tapia v. Tansy*, 926 F.2d 1554, 1562 (10th Cir. 1991) (internal quotation marks omitted).

To prove Smith guilty of the crime for which he was indicted, the government was required to demonstrate beyond a reasonable doubt that:

> (1) Smith knowingly engaged, or attempted to engage, in a sexual act with Jane Doe;
> (2) the sexual act consisted of the penetration, however slight, of Jane Doe's genital opening by Smith's penis;
> (3) Jane Doe could not communicate unwillingness to engage in the sexual act;
> (4) the sexual act took place on or about March 25, 2007;
> (5) the sexual act took place in Indian Country; and
> (6) Smith is an Indian.

R. at 5; *see also* 18 U.S.C. §§ 1153, 2242(2), 2246(2)(A).  Smith specifically contends insufficient evidence was presented to support the jury's findings that he acted knowingly and that Jane Doe was unable to communicate unwillingness to partake in the sexual act.

At trial, the government introduced evidence concerning the sexual assault, Jane Doe's post-assault physical exam, and Smith's confession.  Among that already discussed above, the evidence as a whole adequately supported the jury's finding of each element of the crime.  As to knowledge and Jane Doe's ability to communicate unwillingness, the evidence demonstrated the following:

- Jane Doe was heavily intoxicated before the assault and wished to sleep in the hogan; she fell asleep on a couch in the hogan around 2:00 a.m.

- Some time later, Jane Doe, who had been sleeping on her stomach, woke up to find Smith on top of her and engaged in sex.

- At first, Jane Doe believed she was dreaming; when she realized what was actually happening, she pushed Smith off of her and pulled up her pants.

- Sometime later, Jane Doe fled the hogan and sought assistance at a neighbor's trailer, shouting, "Help me, help me. He raped me."

- Smith's later written confession states, "I had sex with her. I pulled down her pants . . . . I had sex with her for 30 min[utes,] while she was [asleep].." Aple. Br., Ex. 2.

- During his interview with Agent Sayegh, Smith, in addition to writing the confessional statement discussed above, admitted having sex with Jane Doe while she was asleep.

- Smith never stated that Jane Doe agreed to have sex with him.

The district court properly ruled that evidence sufficient to sustain Smith's conviction was presented at trial, and thus did not err by denying Smith's requests for a judgment of acquittal and a new trial.

As a fall back position, Smith also argues that he could not meet the requisite mental state because he was intoxicated at the time the assault took place. However, Smith was convicted of a general intent crime—the element "knowingly" corresponds with the concept of general intent, *see United States v. Blair*, 54 F.3d 639, 641 (10th Cir. 1995)—and voluntary intoxication is no defense to a general intent crime, *see United States v. Hatatley*, 130 F.3d 1399, 1405 (10th Cir. 1997). Accordingly, the contents of Smith's written statement

-18-

and Jane Doe's testimony at trial, whether considered independently or in combination, provide sufficient grounds for a reasonable jury to conclude that Smith acted with the requisite intent.

In sum, viewing all the evidence in the light most favorable to the government, sufficient evidence was presented to sustain Smith's conviction. The district court did not err in denying Smith's requests for a judgment of acquittal and a new trial.

D. Supervised Release

Finally, Smith argues the district court erred by imposing conditions of supervised release limiting his ability to have contact with children and disabled adults. We review the district court's imposition of special conditions of supervised release for abuse of discretion. *See United States v. Hahn*, 551 F.3d 977, 982 (10th Cir. 2008), *cert. denied*, 129 S. Ct. 1687 (2009).

In addition to sentencing Smith to a 60-month term of imprisonment and a 36-month term of supervised release, the district court established special conditions of supervised release restricting Smith's ability to have contact with children and disabled adults. In doing so, the district court overruled Smith's objections to the following special conditions:

- The defendant is restricted from engaging in an occupation where he has access to children, without prior approval of the probation officer.

- The defendant must not loiter within 100 feet of school yards, parks, playgrounds, arcades, or other places used primarily by children under the age of 18.
- The defendant must not volunteer for any activities in which he supervises children or adults with mental or physical disabilities without prior authorization of the probation officer.
- The defendant must not have contact with children under the age of 18 without prior authorization of the probation officer. He must immediately report unauthorized contact with children to the probation officer.

Aplt. Br., Ex. 1 at 5.

Smith objected to those conditions on the grounds that they were not reasonably related to deterrence, public safety, or rehabilitation, and that they were more restrictive than necessary. In overruling Smith's objections, the district court explained:

> The victim here was a woman who was asleep when she was raped . . . . She was in a situation that made her vulnerable. [T]he conduct of the defendant, as viewed through the evidence presented to the jury, was that he took advantage of someone who could not protect [herself] . . . . I don't know how you draw a line and say that[,] because the victim in this case was over the age of 18 . . . , [] any person, child, individual, teenager . . . may not be as vulnerable. I think they can be.
>
> [U]ntil we get the results of the psychosexual evaluation, which will be conducted [] immediately after his release, we will keep [these conditions] in place . . . . [V]ulnerability has, in my view, no age limit. [O]nce that evaluation is completed, [] any and all of these conditions will be revisited, if necessary, and all of the conditions are subject to modification at that time.

R. at 897–98.

-20-

We require conditions of supervised release to be linked to the offense and be no broader than necessary to rehabilitate the defendant and protect the public. They must:

> (1) be reasonably related to the nature and circumstances of the offense and the history and characteristics of the defendant and (2) involve no greater deprivation of liberty than is reasonably necessary given the needs to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*Hahn*, 551 F.3d at 983. The district court is required to provide at least generalized reasons for imposing special conditions of supervised release. *See id.* at 982.

The district court did not abuse its discretion by imposing special conditions of supervised release limiting Smith's ability to have contact with children and disabled adults. At sentencing, the district court explained its reasoning for establishing the special conditions Smith challenges. First, the district court considered Smith's rape of Jane Doe to be an attack on a vulnerable person—the fact that Jane Doe was sleeping rendered her vulnerable and unable to protect herself.

Second, the district court determined that vulnerability has "no age limit," noting that nothing suggests children, teenagers, and adults cannot be as vulnerable as Jane Doe. R. at 898. We find that assessment of Smith's crime

reasonable and thus conclude that the special conditions he contests are rationally related to the nature and circumstances of his offense and the need to protect the public.

We also conclude that the special conditions the district court established do not involve a greater deprivation of liberty than is reasonably necessary to protect the public. The conditions will be informed by a psychological evaluation performed after completion of his sentence, and they can be modified according to the results of that examination. Moreover, we agree with the government that we can fairly presume Smith's probation officer will apply the conditions in a reasonable manner.

But one aspect of the special conditions of supervised release warrants further consideration. Smith has a child, and, read literally, the conditions prohibit contact with his child as well as other minor siblings.[4] Smith points to *United States v. Davis*, 452 F.3d 991 (8th Cir. 2006), *United States v. Voelker*, 489 F.3d 139 (3d Cir. 2007), and *United States v. Loy*, 237 F.3d 251 (3d Cir. 2001), in support of his argument that the special conditions the district court established unduly constrain his liberty. In each of those cases, the court used

_____

[4] We are mindful that the special conditions imposed will not be enforced until Smith is released from prison. While subject to later modification, the requirements are part of the sentencing court's final orders, and are in that sense not contingent upon future events. For those reason, they are ripe for consideration now. *See United States v. White*, 244 F.3d 1199, 1207 (10th Cir. 2001); *cf. United States v. Rhodes*, 552 F.3d 824, 628-29 (7th Cir. 2009) (conditions too contingent).

broad language to impose special conditions of supervised release limiting the defendants' contact with children. Read literally, the blanket language at issue in those cases—like the language used in the special conditions challenged in this case—could have barred the defendants from having any contact with their own children.

Those courts properly recognized the fundamental right of familial association and acknowledged that only a compelling government interest can override that right. For example, in *Davis*, after noting there was no evidence the defendant had sexually abused or would sexually abuse his child, the court held the conditions restricting the defendant's access to children, including his own child, were overbroad. *See Davis*, 452 F.3d at 994–96. Employing the same rationale, the *Voelker* court, observing there was evidence the defendant may be capable of exploiting his child, remanded the case so the district court could define the scope of the condition in question and supplement the record to show a compelling need for the condition. *See Voelker*, 489 F.3d at 153–55. Finding there was no evidence the defendant would be a danger to his own children, the *Loy* court ruled the challenged condition should be construed to apply only to children other than his own. *See Loy*, 237 F.3d at 269–70. Given the fundamental nature of the right to family integrity, the court concluded the district court would have provided a clearer indication if it intended the condition to operate otherwise. *See id.* at 270.

We agree with these courts that special conditions that interfere with the right of familial association can do so only in compelling circumstances. While we recognize Smith has demonstrated a willingness and ability to prey on vulnerable individuals, the record does not unambiguously support a finding that Smith is a danger to his own child or minor siblings. The district court should clarify the scope of the special conditions as to them.

As to other children, the district court appropriately balanced the liberty interests at stake. The behavior for which Smith was convicted—demonstrating his capacity to prey on essentially incapacitated young women—warrants significant concern for the public's safety. The special conditions at issue completely prohibit Smith from loitering within 100 feet of places primarily used by children under the age of 18. Smith may still have contact with children under 18 years of age, work where he has access to children, and volunteer to supervise children and disabled adults, but he must do so with his probation officer's prior authorization.

Given Smith's crime, we do not find those conditions create a greater than reasonably necessary deprivation of liberty. Moreover, we note the district court's declaration at sentencing that the special conditions it established will be reevaluated, and modified or suspended as called for, based on Smith's post-release psychosexual examination. That evidence-based tailoring will further ensure the special conditions are no broader than is reasonably necessary. Smith

moreover remains free to ask the court to modify the conditions pursuant to Rule 32.1(c) of the Federal Rules of Criminal Procedure.

In sum we do not find the district court erred by imposing special conditions on Smith's supervised release.[5] The special conditions the district court established are reasonable, subject to reconsideration of their application to his child and siblings.

### III. Conclusion

For the foregoing reasons, we AFFIRM the rulings of the district court. We REMAND to the district court for further proceedings as to the scope of the special conditions.

---

[5] In his reply brief to this court, Smith raises, for the first time, the argument that the special conditions the district court imposed impermissibly delegate authority to the probation office. Because "issues raised by an appellant for the first time on appeal in a reply brief are generally deemed waived," we will not consider this argument. *Wheeler v. Comm'r Internal Revenue*, 521 F.3d 1289, 1291 (10th Cir. 2008). We note, however, the district court's psychosexual exam-based tailoring of the special conditions of supervised release will likely ensure that any power actually delegated to the probation office is adequately constrained.