## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

GERALD PAUL HEADLEY,

Petitioner - Appellant,

v.

UNITED STATES OF AMERICA,

Respondent - Appellee.

No. 19-8075
(D.C. Nos. 1:18-CV-00193-SWS and
1:16-CR-00226-SWS-1)
(D. Wyoming)

## ORDER DENYING
## CERTIFICATE OF APPEALABILITY[*]

Before **PHILLIPS**, **MURPHY,** and **McHUGH**, Circuit Judges.

Petitioner Gerald Paul Headley, a prisoner in federal custody proceeding pro se,[1]

seeks a Certificate of Appealability ("COA") to challenge the district court's dismissal of

his 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence. Mr. Headley

pleaded guilty—under a plea agreement—to two counts of abusive sexual contact with a

child. His § 2255 motion asserts that his defense counsel was ineffective for various

---

[*]This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and 10th Circuit Rule 32.1.

[1] Because Mr. Headley is proceeding pro se, "we liberally construe his filings, but we will not act as his advocate." *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

reasons, thus rendering his plea agreement involuntary. We decline to grant a COA and dismiss the matter.

## I. BACKGROUND

On October 7, 2016, Federal Bureau of Investigations Special Agent Justin Kempf filed a criminal complaint against Mr. Headley, accusing him of violating 18 U.S.C. §§ 2241(c) and 1153. On November 16, 2016, a grand jury sitting in the United States District Court for the District of Wyoming returned a four-count indictment against Mr. Headley. Counts I, II, and III charged Mr. Headley with aggravated sexual abuse in violation of 18 U.S.C. §§ 2241(c), 2246, and 1153. Count IV charged Mr. Headley with abusive sexual contact in violation of 18 U.S.C. §§ 2244(a)(5), 2246, and 1153.

On December 21, 2016, Mr. Headley entered into a plea agreement. He agreed to plead guilty to two counts of abusive sexual contact, one count as a lesser included offense of Count I and the other as charged by Count IV. In exchange, the United States agreed to dismiss Counts II and III. The parties also agreed to waive their right to appeal the judgment, conviction, and sentence.

Mr. Headley represented that he was entering into the plea agreement "voluntarily because he is, in fact, guilty." ROA, Vol. II at 20. Mr. Headley further represented that he "understands and agrees that the United States will provide the court with a prosecutor's statement outlining the government's essential facts and evidence, all of which the government would rely on to prove [his] guilt at trial." ROA, Vol. II at 22. And, he admitted "to the essential elemental facts contained in the prosecutor's statement." ROA, Vol. II at 22.

2

Mr. Headley and the United States agreed "the appropriate sentence is 180-months imprisonment." ROA, Vol. II at 22. They did not make any agreement, however, regarding supervised release.

On January 3, 2017, the district court convened a change of plea hearing. The district court first confirmed that Mr. Headley was of sound mind. The district court then asked Mr. Headley if he had signed the plea agreement "after having the opportunity to go over each and every provision with your attorney," and Mr. Headley answered, "Yes." ROA, Vol. III at 11. The district court further inquired if Mr. Headley's attorney "was able to answer any questions you had regarding its contents," and Mr. Headley again responded, "Yes." ROA, Vol. III at 12.

The district court then confirmed that Mr. Headley "had an opportunity to review the indictment." ROA, Vol. III at 13. The district court explained the charges and penalties associated with Counts I and IV, as well as the rights that Mr. Headley would give up by pleading guilty, and Mr. Headley confirmed he understood everything the court was telling him.

The district court asked Mr. Headley if he was "making this plea of guilt voluntarily and of your own free will," and Mr. Headley answered, "Yes." ROA, Vol. III at 28. The district court then asked Mr. Headley if he was "making this plea of guilt because you are in fact guilty of the crimes as discussed." ROA, Vol. III at 28. Mr. Headley paused and then answered, "Yes." ROA, Vol. III at 28. The district court then stated, "Mr. Headley, I want to emphasize to you, this is not a time for you to be second-guessing." ROA, Vol. III at 28. Mr. Headley responded, "Yes. I understand." ROA, Vol.

3

III at 28. The district court told Mr. Headley if he was not "comfortable," the court would set a trial for "Monday next week." ROA, Vol. III at 28. The district court next reiterated, "I want to make sure that this is your plea and that you are satisfied with the circumstances and the factual basis." ROA, Vol. III at 28. In response, Mr. Headley confirmed that he had discussed the plea agreement with defense counsel and was "satisfied with his representation." ROA, Vol. III at 29.

Rather than recount his offense conduct in court, Mr. Headley asked that defense counsel be permitted to read portions of the prosecutor's statement into the record. The district court accepted that request but reminded Mr. Headley that he would be bound by defense counsel's words.

As to Count I, defense counsel stated:

> During a forensic interview occurring on September 7, 2016, the minor, known herein as A – by the initials A.S., whose year of birth is 2003, disclosed that they had been touched in a sexual manner by the defendant – that [they] had been touched in a sexual manner by the defendant, [a relative] Gerald Paul Headley, a/k/a Percy Headley. And this disclosure was made finally, although previously to others, to Federal Bureau of Investigation Special Agent Justin Kempf, K-E-M-P-F. That particular – well, I'll move on.

> Furthermore, and at a later date, Special Agent Justin Kempf interviewed Mr. Headley, and during a voluntary recorded interview on September 9, 2016, Mr. Headley admitted that he had touched A.S. in a sexual manner. With regard to – well, I'll wait for a moment on that. And that this sexual contact had occurred in the bedroom of his residence or in his truck on hunting trips.

> The date of birth, the contact described, the corroboration, and the location of these contacts would meet the elements of the lesser included offense of Count 1; that is, between on or about September 6, 2009, and September 5, 2015, in Wyoming – that being Mr. Headley's residence or in the truck on hunting trips – Mr. Headley we would have and do now

4

stipulate is an Indian, and he knowingly engaged in and caused sexual contact as defined – and that definition has been provided to Mr. Headley – with another person who had not yet attained the age of 12 years.

And also, Mr. Headley's voluntary statements, especially to Agent Kempf, estimated that A.S. was probably seven or eight years old when this contact occurred. So [A.S.] had not yet attained the age of 12, and that the intentional touching was of a sexual nature as defined by the statute.

ROA, Vol. III at 31–32.

The district court confirmed with Mr. Headley that he agreed with the factual statement read by defense counsel, that he "had sexual contact with A.S. at a time when [A.S.] . . . had not yet attained the age of 12 years," and that the "contact occurred within Indian country." ROA, Vol. III at 32.

As to Count IV, defense counsel stated:

With regard to Count 4, the primary count of abusive sexual contact, once again, during an interview, a forensic interview, on September 7, 2016, with the minor identified by the initials S.S. and whose year of birth was 2003 . . . . the minor disclosed that [they] had been touched in a sexual manner by the defendant, [a relative] Gerald Paul Headley, Junior, a/k/a Percy Headley. And that admission – those statements were made to others and finally to Federal Bureau of Investigation Special Agent Justin Kempf. [S.S.] also disclosed to Agent Kempf that [S.S] was touched by Mr. Headley on multiple occasions when they were at his residence and/or inside his vehicle when he would take them hunting and – when he would take [S.S.] hunting.

Once again, on September 9 Mr. Headley, during a voluntary recorded interview with Special Agent Kempf, admitted that he had touched S.S. multiple times in a sexual manner and estimated that this had happened a number of times.

With regard to the minors involved in both the lesser included offense of Count 1 and the substantive offense in Count 4, the total number of times was estimated by Mr. Headley to have occurred 10 to 15 times between both minors and in each instance in the bedroom of the residence or in the truck on a hunting trip.

5

> S.S.'s minority is established by . . . date of birth, which is 2003. These events occurred before the final date of 2015, which would cause [S.S.] – which would cause [S.S.] to be – [S.S.] would in fact be less than 12 years of age.
>
> . . . .
>
> Mr. Headley would also stipulate that he is in fact an Indian, that his residence is within the jurisdictional boundaries of the Wind River Indian Reservation, and that the sexual contact that occurred – that is, the touching that occurred – was such as to meet the definition of 18 U.S.C. 2246(3).

ROA, Vol. III at 33–34.

The district court confirmed with Mr. Headley that he endorsed the facts as set forth by defense counsel, that he "engaged in sexual contact with S.S. at a time before [S.S.] had attained . . . the age of 12," and that "these events occurred on the Wind River Indian Reservation." ROA, Vol. III at 34. Lastly, the district court confirmed with Mr. Headley that his contact with the two victims met the statutory definition of sexual contact.

The United States Probation Office prepared a presentence investigation report ("PSR") that is not part of the record on appeal. The district court's docket reflects that Mr. Headley did not submit any objections to the PSR.

On March 24, 2017, the district court convened a sentencing hearing. The district court asked Mr. Headley whether he "had an opportunity to go over" the PSR. ROA, Vol. III at 41. Mr. Headley answered, "No. I haven't seen that." ROA, Vol. III at 41. The district court then declared a recess so defense counsel could review the PSR with Mr. Headley.

6

Court reconvened sixteen minutes later, and Mr. Headley confirmed he had gone over the PSR and did not have any questions. The district court accepted the plea agreement and sentenced Mr. Headley to 180 months in prison, to be followed by a lifetime of supervised release. The district court entered judgment on March 29, 2017.[2]

On April 4, 2017, Mr. Headley filed a notice of appeal. After the United States filed a motion to enforce the plea waiver in Mr. Headley's plea agreement, Mr. Headley voluntarily dismissed his appeal.

On November 8, 2018, Mr. Headley filed a § 2255 motion, together with motions requesting an evidentiary hearing, appointment of counsel, and discovery.[3] The § 2255 motion asserted that defense counsel had rendered ineffective assistance: (1) by failing to meet with Mr. Headley or provide copies of his case files; (2) by pressuring Mr. Headley to sign the plea agreement; (3) by failing to raise problems with the indictment; (4) by failing to argue for a shorter term of supervised release; (5) by failing to provide Mr. Headley with a copy of the PSR; (6) by failing to object to late notice of similar crimes evidence; (7) by failing to object to the plea agreement because Mr. Headley did

---

[2] On May 5, 2017, the district court entered an amended judgment clarifying that it had sentenced Mr. Headley to 180 months in prison on each of the two counts, to run concurrently.

[3] Mr. Headley twice moved for an extension of time to file his § 2255 motion. Both times, the district court denied Mr. Headley's extension request as premature because there was substantial time before the deadline to file a § 2255 motion.

not have the prosecutor's statement in his possession when he agreed to its contents;[4] (8) by failing to object to the United States' jurisdiction; and (9) by failing to move to suppress Agent Kempf's interview with Mr. Headley. The § 2255 motion additionally asserted that appellate counsel had rendered ineffective assistance by filing a motion to voluntarily withdraw Mr. Headley's direct appeal.

On October 28, 2019, the district court, in a thorough and well-reasoned opinion, denied Mr. Headley's § 2255 motion and other motions. The district court also declined to issue a COA.

Mr. Headley filed a notice of appeal on December 2, 2019, followed by a formal application for a COA.

## II. ANALYSIS

In his application for a COA, Mr. Headley groups his arguments into seven issues, each presenting multiple arguments. We first address Mr. Headley's motion to seal, and then turn to the issues raised in Mr. Headley's application.

### A. Motion to Seal

On February 13, 2020, Mr. Headley filed a motion to seal "all records." On February 24, 2020, the United States partially opposed Mr. Headley's motion. Specifically, the United States asked us to seal only those portions of the record containing "child victim information." Resp. to Appellant's Mot. to Seal at 3; *see* 18

---

[4] "Ground Seven" of the motion also asserted that appellate counsel had rendered ineffective assistance by failing to object to the plea agreement in Mr. Headley's direct appeal.

U.S.C. § 3509(d)(2) ("All papers to be filed in court that disclose the name of or any other information concerning a child shall be filed under seal . . . ."). The Clerk of Court provisionally sealed the preliminary record, Mr. Headley's brief, and Volumes I, II, III, and V of the record on appeal. We see no error in the Clerk's decision to seal those materials, so the prior order remains in place, which by its own terms continues "unless this court orders otherwise."

## B. Certificate of Appealability

"[T]here can be no appeal from a final order in a § 2255 proceeding unless a circuit justice or judge issues a certificate of appealability." *Welch v. United States*, 136 S. Ct. 1257, 1263 (2016). "A certificate of appealability may issue 'only if the applicant has made a substantial showing of the denial of a constitutional right.'" *Id.* (quoting 28 U.S.C. § 2253(c)(2)). "That standard is met when 'reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner.'" *Id.* (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

## C. Section 2255 & Ineffective Assistance

Because the district court denied Mr. Headley's motion for an evidentiary hearing, "our review proceeds in two steps." *United States v. Herring*, 935 F.3d 1102, 1107 (10th Cir. 2019). "First, we ask whether the defendant's allegations, if proved, would entitle him to relief, an inquiry we conduct de novo." *Id.* (citations omitted). "If so, we then determine whether the denial of the evidentiary hearing constituted an abuse of discretion." *Id.*

9

"To establish ineffective assistance of counsel, a movant must show (1) that counsel's representation was deficient because it 'fell below an objective standard of reasonableness' and (2) that counsel's 'deficient performance prejudiced the defense.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). To show prejudice, a movant must establish "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Heard v. Addison*, 728 F.3d 1170, 1183 (10th Cir. 2013) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). This counterfactual inquiry turns on whether "a decision to reject the plea bargain would have been *rational* under the circumstances." *Id.* at 1184 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)). We have described the rationality requirement as an "objective floor" on the prejudice analysis that cannot be satisfied by "bald, post hoc and unsupported statements that a defendant would have changed his plea absent counsel's errors." *Id.* (emphasis omitted).

We start our consideration of Mr. Headley's COA application by evaluating prejudice. Because no reasonable jurist could conclude it would have been rational for Mr. Headley to go to trial, most of Mr. Headley's arguments fail for lack of prejudice.

Each count of aggravated sexual abuse charged in the indictment carried a thirty-year mandatory minimum term of imprisonment. *See* 18 U.S.C. § 2241(c) (requiring "imprison[ment] for not less than 30 years or for life"). Consequently, if Mr. Headley had gone to trial, a conviction on any of the aggravated sexual abuse counts would have exposed him to the possibility of a sentence substantially greater than the 180 months dictated by the plea agreement.

10

A rational defendant would have assessed a high probability the United States would have obtained a conviction on at least one count of aggravated sexual abuse. At trial, the United States would have presented the results of Agent Kempf's investigation, which included interviews with the two victims and Mr. Headley's taped confession. As the district court remarked at the sentencing hearing, "[H]ad this man gone to trial and his statement admission had [sic] been read, the jury would likely have convicted him, and he would spend the rest of his life in prison." ROA, Vol. III at 72.

In his application for a COA, Mr. Headley repeatedly asserts that he is innocent, and that he should have been given an opportunity to "rebut the allegations." Headley Br. at 2; *id.* at 8 (stating that Mr. Headley wanted to "build a defense"); *id.* at 9 (stating that Mr. Headley's confession to Agent Kempf was a "story" he was "making up"); *id.* at 10 (referring to unspecified "inconsistencies in the alleged victim(s) statements"). But he offers no evidence that a rational defendant would have risked significant additional prison time based on such vague and conclusory denials.

Though our determination that reasonable jurists could not debate whether Mr. Headley has shown prejudice disposes of most of his arguments, for the sake of completeness we nevertheless proceed to analyze each of the seven issues raised in the application for a COA.

1. **Issue One: Failure to Consult**

Mr. Headley argues defense counsel was ineffective for failing to meet with him prior to signing the plea agreement, "to disclose or review any evidence, or to question Mr. Headley about his version of events, or to give Mr. Headley an opportunity to rebut

the allegations." Headley Br. at 2. As we have stated and as the district court found, Mr. Headley has not shown the alleged ineffective representation was prejudicial.

## 2. Issue Two: Problems with the Guilty Plea

Mr. Headley argues the district court failed to inform him of the nature of the charges, contrary to Federal Rule of Criminal Procedure 11(b)(1)(G). But, as Mr. Headley acknowledges, he did not raise this issue in his § 2255 motion, and "a party waives an issue in the district court if he waits to raise the argument until his reply brief." *United States v. Lee Vang Lor*, 706 F.3d 1252, 1256 (10th Cir. 2013) (refusing to consider an argument on appeal not raised in a § 2255 motion).

Mr. Headley next argues that the district court, in summarizing Count I of the indictment at the change of plea hearing, stated the relevant offense conduct occurred between September 6, 2009, and September 9, 2015. Mr. Headley further contends that some of the days included in that time period are after A.S.'s twelfth birthday. In contrast, the indictment indicates the relevant offense conduct occurred between September 6, 2009, and September 5, 2015. Mr. Headley does not explain, however, why the discrepancy between the end date in the indictment and the date recited at the change of plea hearing entitles him to relief. To the extent Mr. Headley was confused by the date recited at the change of plea hearing, the district court resolved that confusion several moments later when it stated that A.S. was less than twelve years old at the time of the alleged sexual contact.

Mr. Headley also argues that defense counsel pressured him to sign the plea agreement and did not provide him with a copy of the prosecutor's statement. But at the

change of plea hearing Mr. Headley repeatedly reassured the district court, under oath, that he was entering into the plea agreement voluntarily, that he had an opportunity to discuss the agreement with counsel, that he was satisfied with counsel, and that he was entering into the plea agreement because he was guilty. Regardless, Mr. Headley has not shown that any errors committed by defense counsel were prejudicial, for the reasons already explained.

Finally, Mr. Headley argues the district court coerced him to plead guilty when it stated, "this is not a time for you to be second-guessing." ROA, Vol. III at 28. Mr. Headley did not raise this argument in his § 2255 motion so we do not consider it. *Lee Vang Lor*, 706 F.3d at 1256.

### 3. Issue Three: Motion to Suppress

Mr. Headley argues defense counsel was ineffective for failing to file a motion to suppress his interview with Agent Kempf. Specifically, Mr. Headley asserts he was abusing alcohol "over a two-week timespan" leading up to the interview. Headley Br. at 9. The district court rejected this argument because a motion to suppress would have been meritless. We agree.

"[I]ntoxication does not automatically render a statement involuntary." *United States v. Smith*, 606 F.3d 1270, 1276 (10th Cir. 2010) (quotation marks omitted). "Rather, the test is 'whether a [suspect's] will was overborne by the circumstances surrounding the giving of a confession.'" *Id.* at 1276–77 (alteration in original) (quoting *Dickerson v. United States*, 530 U.S. 428, 434 (2000)).

13

Mr. Headley does not offer any evidence that he was "incapable of sufficient comprehension" at the time of his interview with Agent Kempf. *Id.* at 1277. The district court found, and Mr. Headley does not contest, that Agent Kempf told Mr. Headley he "didn't have to speak," "was not under arrest," and "could stop talking at any point." ROA, Vol. II at 69. In response, Mr. Headley "verbally responded that he understood." ROA, Vol. II at 69. Under these circumstances, Mr. Headley has not shown that defense counsel overlooked a meritorious argument for suppressing the interview.

## 4. Issue Four: Problems with the Charges

Mr. Headley points to a part of the prosecutor's statement that refers to sexual contact when A.S. "was 12 years old." ROA, Vol. II at 34. This, he argues, shows the United States did not have evidence of sexual contact with a child under the age of twelve. But Mr. Headley ignores that the prosecutor's statement described "multiple incidents . . . when [A.S.] was between six and eight years old." ROA, Vol. II at 33. The fact that the last reported contact occurred when A.S. "was 12 years old" supports the prosecution's evidence that the prior sexual contacts took place before A.S.'s twelfth birthday.

Mr. Headley next argues defense counsel was ineffective for failing to argue the indictment was defective because it did not allege a "sexual act." Mr. Headley misreads 18 U.S.C. § 2244(a)(5). That statute makes it a crime to engage in "sexual contact" with another person, "if so to do would violate . . . subsection (c) of section 2241 of this title had the sexual contact been a sexual act." 18 U.S.C. § 2244(a)(5). As the district court explained, the United States did not need to allege a "sexual act" to properly charge Mr.

14

Headley with a violation of 18 U.S.C. § 2244(a)(5). It merely needed to allege "sexual contact," together with the other elements set forth in § 2241(c).

Mr. Headley also argues defense counsel should have realized the court failed to provide Mr. Headley with a United States Sentencing Guidelines range for Count IV. But the district court did calculate the applicable Guidelines range, as required, before it accepted the sentence recommended by the parties' plea agreement. *See Hughes v. United States*, 138 S. Ct. 1765, 1776 (2018).[5]

## 5.  Issue Five: Supervised Release

Mr. Headley contends defense counsel was ineffective for failing to argue for a shorter term of supervised release. The district court found that Mr. Headley had not established prejudice, because he did not specify any argument for leniency defense counsel should have made at the sentencing hearing. We agree. The district court's decision to impose a life term of supervised release on each count is authorized by statute. *See* 18 U.S.C. § 3583(k). And the Guidelines recommend the statutory maximum term of supervised release for sex offenses. U.S.S.G. § 5D1.2(b); *see also United States v. Young*, 502 F. App'x 726, 727 (10th Cir. 2012) (unpublished) ("We therefore presume the lifetime term of supervised release . . . is reasonable."). Under these circumstances, Mr. Headley has not shown that he was prejudiced by defense counsel's failure to make an unspecified argument for a shorter term of supervised release.

---

[5] Defense counsel expressed agreement with the district court's calculations.

## 6. Issue Six: The PSR

Mr. Headley argues defense counsel was ineffective for failing to provide him with a copy of the PSR thirty-five days before sentencing. He further argues that, had defense counsel provided Mr. Headley with a copy of the PSR, Mr. Headley would have had a chance to raise meritorious objections to the Guidelines range. The district court found Mr. Headley had not shown prejudice because he received the "sentence he agreed to—a significant downward variance from the calculated advisory" Guidelines range. ROA, Vol. II at 62. We agree. Because the district court accepted the recommended sentence in the plea agreement, the hypothetical objections Mr. Headley now asserts would not have resulted in a different sentence.

## 7. Issue Seven: Jurisdiction

Mr. Headley argues the United States "usurped" the sovereignty of the Northern Arapaho Tribe by prosecuting him without first deferring to the Tribe's "concurrent jurisdiction." Headley Br. at 20–25. The district court rejected this argument because the United States' prosecution of Mr. Headley was authorized by 18 U.S.C. § 1153. Reasonable jurists could not disagree with the district court's analysis. *See United States v. Antelope*, 430 U.S. 641, 648 (1977) ("Congress has undoubted constitutional power to prescribe a criminal code applicable in Indian country . . . ." (citing *United States v. Kagama*, 118 U.S. 375 (1886))).

Mr. Headley relatedly argues that the United States was required by the Treaty of Laramie to give notice of his prosecution to the Northern Arapaho Tribe. But he admits

that he did not raise this argument in his § 2255 motion, so we do not consider it. *Lee*

*Vang Lor*, 706 F.3d at 1256.

### III.   CONCLUSION

Because Mr. Headley fails to establish that reasonable jurists could debate whether

he is entitled to relief, we **DENY** his request for a COA and **DISMISS** the matter.

Entered for the Court


Carolyn B. McHugh
Circuit Judge