FILED
United States Court of Appeals
Tenth Circuit

May 2, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MARK EUGENE JOHNSON,

Defendant-Appellant.

No. 11-6154
(D.C. No. 5:10-CR-00041-HE-1)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Chief Judge, **McKAY** and **LUCERO**, Circuit Judges.

Mark Eugene Johnson appeals his jury conviction on one count of bank robbery, in violation of 18 U.S.C. § 2113(a), and his resulting sentence of life imprisonment under the federal "three strikes" sentencing statute, 18 U.S.C. § 3559(c). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I

## *Factual Background*

On January 22, 2010, a black man with a goatee, wearing a brown blazer, striped wind pants, a purplish scarf, and sandals, robbed the Oklahoma Fidelity Bank on Second Street in Edmond, Oklahoma (a bank insured by the Federal Deposit Insurance Corporation (FDIC)). The robber set a silver cylinder wrapped in a napkin on the counter and announced that it was a detonator. Along with the money in her drawer, the teller gave him "bait bills" and a dye pack. Carrying the money in his hand, the man left the bank while cautioning the teller not to let anything happen to the detonator. The teller hit an alarm, and the employees vacated the premises.

The dye pack was triggered and expelled red dye when the robber left the bank. Investigators found currency, the dye pack, and red discoloration on a grassy area near the bank. Near the money, investigators also found a wallet with a driver's license and insurance card naming Mark Johnson. The bomb squad examined the "detonator" and determined that it was a hoax device.

Two Edmond police officers in a patrol car heard the radio alert for the robber. A few blocks from the bank, they spotted and stopped a man matching the suspect's description, who turned out to be Johnson. He was wearing a brown blazer and carrying a purplish scarf and sandals in his left hand. In his right hand he held a napkin or paper towel stained with a red substance. His hand also was stained with a red substance.

Officer James O'Neill handcuffed Johnson and placed him in the backseat of the patrol car pending further investigation. A few minutes later a photographer (not associated with law enforcement) began taking pictures of Johnson. Johnson did not like being photographed. Johnson got O'Neill's attention, and without prompting, said, "hey, let's get this on with. The money is over there," while motioning toward the bank. R., Vol. 3 at 176. O'Neill read Johnson his *Miranda* rights, but may have omitted the right to appointed counsel.[1] Johnson then said the money had started leaking and he dropped the money and his wallet by the bank. The officers took Johnson to the police station for booking.

At the police station, two agents from the Federal Bureau of Investigation interviewed Johnson. Special Agent Douglas Samuels testified that he read Johnson his *Miranda* rights, and Johnson signed a written acknowledgement form. Johnson agreed to speak with them without an attorney present. During the interview Johnson confessed to the bank robbery and spoke about dropping the money when it started leaking.

*Trial Proceedings*

Johnson was indicted on a single count of bank robbery. Before trial, his counsel raised questions about his mental competency. The first court-ordered

---

[1] At a pre-trial evidentiary hearing, O'Neill's summary of his advisement to Johnson did not include the right to appointed counsel. But the district court did not explicitly find that the *Miranda* warnings were incomplete, stating at the end of the hearing that it did not matter because the statements to O'Neill were volunteered.

mental evaluation tentatively concluded that Johnson was not competent to be tried, but expressed concerns that he may be malingering and recommended further evaluations. The court ordered another mental evaluation, which was performed for nearly four months by Dr. Christina Pietz, a board-certified forensic psychologist, and other mental health professionals at the Bureau of Prisons medical center in Springfield, Missouri. Pietz issued a written opinion that Johnson was malingering, that he did not suffer from a mental disease or defect, and that he was competent to understand the proceeding and to assist in his defense. In reaching those conclusions, Pietz did not perform the tests recommended by the first examiners. After holding a competency hearing at which Pietz testified about her opinions and why she did not perform additional tests, the court concluded that Johnson was competent for trial.

The district court also held a pre-trial hearing on the voluntariness of Johnson's statements to law enforcement. After hearing O'Neill's and Samuels's testimony, the court concluded that Johnson's statements were voluntary and admissible at trial.

At trial, Johnson's theory of defense was that the government had made numerous assumptions in building its case and had failed to pursue common investigative techniques that could have negated those assumptions (for example, the investigators assumed that the red marking on Johnson's hand was from the dye pack, but did not test the swab they took of his hand to determine whether the substance actually was dye). The government requested an "investigative techniques"

instruction that would inform the jury it had no duty to use all possible methods of investigation. Overruling Johnson's objection, the court gave the instruction.

The jury found Johnson guilty. At sentencing, the determinative issue was whether Johnson was eligible for sentencing under the three-strikes statute. Johnson contended that the instant offense did not qualify as a third serious violent felony, and he also argued that a prior Kansas conviction did not qualify as a serious violent felony. Concluding that both convictions were serious violent felonies, the district court imposed a life sentence under § 3559(c).

II

On appeal, Johnson argues: (1) the district court clearly erred in finding he was competent to be tried; (2) the court erred in refusing to suppress the statements he made to law enforcement officials after receiving an incomplete *Miranda* warning; (3) the evidence was insufficient for conviction; (4) the court should have declined to give the investigative-techniques instruction; and (5) the court erred in sentencing him under the three-strikes statute.

*A. The district court did not clearly err in finding Johnson competent.*

Johnson first contests the district court's finding that he was competent to be tried. "We review the district court's competency determination for clear error and will reverse only if we are left with the definite and firm conviction that a mistake has been committed." *United States v. DeShazer*, 554 F.3d 1281, 1286 (10th Cir. 2009) (internal quotation marks omitted). "The district court need not be correct, but

- 5 -

its finding must be permissible in light of the evidence." *United States v. Mackovich*, 209 F.3d 1227, 1232 (10th Cir. 2000) (internal quotation marks omitted).

A defendant is incompetent to be tried if he is "suffering from a mental disease or defect rendering him . . . unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d); *see also DeShazer*, 554 F.3d at 1286 ("The test for competency to stand trial asks whether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as factual understanding of the proceedings against him." (internal quotation marks omitted)). "When assessing a defendant's competence, the district court may rely on a number of factors, including medical opinion and the court's observation of the defendant's comportment." *Mackovich*, 209 F.3d at 1232 (internal quotation marks omitted).

The district court did not clearly err in finding that Johnson was competent to stand trial. Pietz opined that Johnson was able to understand the proceedings against him and to assist in his own defense. We have held that a district court does not clearly err when it accepts and relies on expert testimony regarding competency. *See id.*; *see also United States v. Pompey*, 264 F.3d 1176, 1179 (10th Cir. 2001) ("It was within the district court's province to assess the credibility of the witnesses, including the forensic psychologist . . . ."). Further, the district court heard recordings of two of Johnson's telephone conversations, finding persuasive "the

rather dramatic differences" between those conversations and his interactions with mental health personnel. R., Vol. 3 at 411. Also, the district court had the ability to observe Johnson's behavior before the court, during not only the competency hearing but also at other proceedings. *See Mackovich*, 209 F.3d at 1232. Given the evidence presented regarding Johnson's competency and the court's own ability to observe Johnson's behavior, the district court's finding of competency was not clearly erroneous.

B.  *The district court did not err in refusing to suppress Johnson's statements.*

Next, Johnson argues that the court erred in determining his confessions to O'Neill and Samuels were voluntary and admissible. "When a party challenges a district court's ruling on a motion to suppress a confession, we review its conclusions of law de novo and its factual findings for clear error." *United States v. Pettigrew*, 468 F.3d 626, 633 (10th Cir. 2006). "Our de novo review includes the ultimate issue of whether a statement was voluntary, taking into account the totality of the circumstances surrounding the confession." *Id.* (internal quotation marks omitted). Johnson does not contest that his first statement to O'Neill was voluntary, so we focus on the post-*Miranda*-warning statements to O'Neill and the statements to Samuels.

### 1.  Post-Miranda-*warning statements to O'Neill*

The district court held that the post-*Miranda*-warning admissions to O'Neill were admissible because they were voluntary statements that were not the products of any questioning or coercion by the officer. "The evidence I think establishes that the

defendant was reacting to the interest in him by the photographer as opposed to some sort of an inquiry made by the police department." R., Vol. 3 at 63-64. Johnson suggests that the circumstances fit the legal definition of interrogation.

"*Miranda* rights need only be given to a suspect at the moment that suspect is 'in custody' and the questioning meets the legal definition of 'interrogation.'" *United States v. Chee*, 514 F.3d 1106, 1112 (10th Cir. 2008) (quoting *United States v. Perdue*, 8 F.3d 1455, 1463 (10th Cir. 1993)). The government does not dispute Johnson's assertion that he was in custody, so the issue is whether he was subjected to "interrogation." In defining "interrogation," the Supreme Court has stated:

> [T]he *Miranda* safeguards come into play whenever a person in custody is subject to either express questioning or its functional equivalent. That is to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

*Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980)).

Johnson argues that the "circumstances were such that it was reasonable for him to conclude the officer was seeking additional information from him and likely the circumstances would elicit an incriminating response." Aplt. Br. at 32. We disagree. Johnson sought to get O'Neill's attention and began speaking without any prompts. O'Neill interrupted him to give the *Miranda* warnings. Johnson said that he understood his rights and continued speaking, again without being asked any questions. He was handcuffed in the back of the police car, but the district court

credited O'Neill's testimony that the officer made no threats, used no coercion, and made no promises. There is no evidence that O'Neill said or did anything that was reasonably likely to elicit an incriminating response from Johnson. Therefore, the district court did not err in concluding that the statements to O'Neill were admissible.

### 2. *Statements to Samuels*

The district court held that the statements to Samuels also were voluntary. On appeal, Johnson argues that these statements were tainted by O'Neill's incomplete *Miranda* warning.

As the government points out, Johnson did not make this argument before the district court. At the evidentiary hearing, defense counsel briefly remarked that it appeared that O'Neill's *Miranda* warnings were incomplete. But that was the extent of counsel's argument; he did not go on to assert the specific theory now presented on appeal. Accordingly, this argument is waived. *See* Fed. R. Crim. P. 12(e); *United States v. Burke*, 633 F.3d 984, 988-89 (10th Cir.), *cert. denied*, 131 S. Ct. 2130 (2011); *United States v. Hamilton*, 587 F.3d 1199, 1213 (10th Cir. 2009).[2]

### C. *The evidence was sufficient to support the conviction.*

Johnson further argues that there was insufficient evidence to support his conviction. "We review sufficiency of the evidence challenges de novo to determine

---

[2] In his reply, Johnson maintains that his argument was adequately presented to the district court. Therefore, he has not demonstrated good cause for his failure to raise the argument, as required to qualify for Rule 12(e)'s sole exception to waiver, s*ee Burke*, 633 F.3d at 988; *Hamilton*, 587 F.3d at 1215-16.

whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *United States v. Doe*, 572 F.3d 1162, 1171 (10th Cir. 2009) (internal quotation marks omitted).

Johnson highlights various weaknesses and uncertainties in the evidence. But when viewed in the light most favorable to the government, as it must be, the evidence clearly is sufficient to support the conviction. The bank was FDIC-insured. Johnson was found, shortly after the robbery, only a few blocks away. He met the description of the robber. The robber had carried the money by hand, but dropped it when the dye pack activated, and Johnson's hand was stained with the color of dye from the dye pack. Johnson's wallet was found near the money and dye pack. The teller identified him in court. And, as discussed above, Johnson's confessions to law enforcement officials were properly admitted. This is ample evidence for a rational juror to render a guilty verdict.

### D. *The district court did not err in instructing the jury.*

Johnson further challenges the court's decision to give the government's requested investigative-techniques jury instruction. "This court reviews a district court's decision to give a particular jury instruction for an abuse of discretion and considers the instructions as a whole *de novo* to determine whether they accurately informed the jury of the governing law." *United States v. Cota-Meza*, 367 F.3d 1218, 1221 (10th Cir. 2004). "On review, this court merely determines whether the jury

was misled by the instructions and whether it had an understanding of the issues and its duty to resolve those issues." *Id.*

The challenged instruction stated:

> You have heard testimony as to the manner in which the government conducted its investigation in this case including certain investigative methods or techniques that were used and certain investigative methods or techniques that were not used. In attempting to prove its case, the government is under no obligation to use all of the investigative methods that are available to it or use any particular method. The question is whether the evidence presented is sufficient to convince you beyond a reasonable doubt of the defendant's guilt.

R., Vol. 1 at 39. Johnson argues this instruction fatally undermined his theory of defense by telling the jury to disregard it. Both parties recognize that the Second and Fourth Circuits have approved similar instructions, *see United States v. Saldarriaga*, 204 F.3d 50, 52-53 (2d Cir. 2000) (per curiam); *United States v. Mason*, 954 F.2d 219, 222 (4th Cir. 1992), but assert that this court has not yet addressed the propriety of an investigative-techniques instruction.

In *Cota-Meza*, however, this court did consider an investigative-techniques instruction. 367 F.3d at 1223. The challenged instruction in *Cota-Meza* stated:

> Evidence has been received regarding law enforcement methods and equipment used in the investigation of this case. Likewise, evidence has been received concerning enforcement methods and equipment which were not used in relation to the investigation.
>
> You may consider this evidence for the purpose of evaluating the weight of the evidence produced by the government and the credibility of law enforcement personnel involved in the investigation. However, there is no legal requirement that the government, through its enforcement agents, must use all known or available crime detection methods or any particular type of equipment in its investigations.

- 11 -

*Id.* This court determined that the instruction was not an abuse of the district court's discretion:

> The challenged instruction does not misstate the law; Cota-Meza himself acknowledges that there is no legal requirement that law enforcement officers utilize every available investigative method. Merely because the instruction informs the jury that the utilization of all known investigative methods is not legally *required* does not prevent the jury from concluding that a failure to employ certain investigative methods nevertheless detracts from the credibility of the government's evidence. . . . Other jury instructions further informed the jury that they were the sole judges of the credibility of witnesses and the weight to be given to evidence.

*Id.*

Similarly, in this case the instruction was an accurate statement of the law. It did not prevent the jury from considering the extent of the government's investigation and concluding that the prosecution fell short of proving Johnson's guilt beyond a reasonable doubt. Further, other instructions informed the jury that it was to determine credibility and weigh the evidence, and that the government bore the burden to prove beyond a reasonable doubt that Johnson was guilty of the crime charged. Because the jury was not misled, the district court did not abuse its discretion in giving the requested instruction.

      *E. Johnson qualified for sentencing under the three-strikes statute.*

The three-strikes sentencing statute requires a sentence of life imprisonment for a defendant convicted of a "serious violent felony," after having two or more prior convictions for a "serious violent felony." 18 U.S.C. § 3559(c)(1). Johnson argues that he is not eligible for sentencing under this provision because neither the

- 12 -

instant conviction nor his 1997 Kansas conviction for intentional torture and abuse of a child qualify as serious violent felonies.[3] We review the application of the three-strikes statute de novo. *See United States v. Cooper*, 375 F.3d 1041, 1053 (10th Cir. 2004).

## *1. Instant conviction*

Robbery generally qualifies as a "serious violent felony" for purposes of the three-strikes statute. *See* 18 U.S.C. § 3559(c)(2)(F)(i). The statute, however, also provides that a defendant may establish that certain offenses (including robbery) are non-qualifying felonies "if . . . (i) no firearm or other dangerous weapon was used in the offense and no threat of use of a firearm or other dangerous weapon was involved in the offense; and (ii) the offense did not result in death or serious bodily injury . . . to any person." *Id.* § 3559(c)(3)(A). It is the government's burden to establish, by a preponderance of the evidence, the fact of a conviction. *See Cooper*, 375 F.3d at 1052. Then it is the defendant's burden to establish, by clear and convincing evidence, the elements of a non-qualifying felony. *See* 18 U.S.C. § 3559(c)(3)(A).

Johnson asserts that the instant conviction is a non-qualifying felony because the "detonator" was a fake, not a real explosive device. Therefore, he asserts, he did not use a dangerous weapon or threaten to use a dangerous weapon. We disagree.

---

[3] Johnson does not challenge his first qualifying felony, a 1980 conviction for aggravated robbery.

- 13 -

In *United States v. Jones*, 213 F.3d 1253, 1262 (10th Cir. 2000), this court held that the "threat" element was satisfied where a robber announced that he had a gun and made gestures consistent with having a gun, even though there was no gun. "[T]he 'threat of use' includes a communicated expression to a victim that the defendant would use a firearm." *Id.* (internal quotation marks omitted). "The fact that no gun was actually present does not prevent it from being a 'threat.'" *Id.; see also United States v. Matthews*, 545 F.3d 223, 228 (2d Cir. 2008) ("[I]t is irrelevant for purposes of analysis under § 3559(c)(3)(A)(i) whether or not the object Matthews brandished was actually a handgun where Matthews used the object to create the impression that he was committing the robbery with a weapon."). Likewise, the fact that in this case the "detonator" was a hoax device does not prevent Johnson's conduct from being a threat to use a dangerous weapon. Johnson has not satisfied his burden of showing that the instant conviction is a non-qualifying felony.

## 2. *Prior Kansas conviction*

Johnson argues that his 1997 Kansas conviction for intentional torture and abuse of a child does not meet the definition of a "serious violent felony." He also contends that even if the conviction is a "serious violent felony," it is a non-qualifying felony because it did not involve a dangerous weapon and did not result in death or serious bodily injury. Again, we disagree.

> In addition to listed crimes such as robbery, "serious violent felony" includes
>
> > any other offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or

- 14 -

> threatened use of physical force against the person of another or that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense.

18 U.S.C. § 3559(c)(2)(F)(ii). Johnson argues that the 1997 conviction does not meet this definition because the Kansas statute under which he was convicted can be violated without the use, attempted use, or threatened use of physical force against a person, and the charging document does not provide sufficient information to conclude that the offense included, or by its nature involved, the use, attempted use, or threatened use of physical force against a person.

The language of § 3559(c)(3)(A) "unmistakably requires courts to look to the specific facts underlying the prior offense, not to the elements of the statute under which the defendant was convicted." *Mackovich*, 209 F.3d at 1240. In examining the facts, we are not limited to the charging document. *See id.* at 1238 (noting that the government submitted judgments of conviction, offense reports, and a written confession); *id.* at 1241 (referring to the offense reports and other documents); *see also Johnson v. United States*, 130 S. Ct. 1265, 1273 (2010) (stating that the "modified categorical approach" allows a court to consult "the trial record— including . . . findings of fact and conclusions of law from a bench trial"). The materials submitted in this case show that the conviction was based on Johnson's physical beating of a child. This offense obviously involved the use of physical force against the victim.

The non-qualifying felony exception also applies to offenses under

§ 3559(c)(2)(F)(ii). *See* 18 U.S.C. § 3559(c)(3)(A). Johnson argues that the Kansas

conviction did not involve the use of a dangerous weapon and did not involve serious

bodily injury. Again, we disagree. The trial judge (who was the fact finder in this

bench trial) found that Johnson committed "a cruel beating," R., Vol. 1 at 205, and he

stated that the marks left on the child were "severe," *id.* at 206. At sentencing, the

court described the instrument and the child's injuries, noting that "we're not talking

about a beating just with an extension cord. This is an extension cord that was

wrapped and wrapped and wrapped and turned over on itself leaving crescent shaped

marks that are well healed over, all over this boy's back, his buttocks, the front and

back of his legs." *Id.* at 262. We have said in another context that "in the proper

circumstances, almost anything can count as a dangerous weapon, including . . .

leather straps." *United States v. Serrata*, 425 F.3d 886, 910 (10th Cir. 2005) (internal

quotation marks omitted). It is evident that in these circumstances, the extension

cord qualifies as a dangerous weapon, such that the conviction cannot be a

non-qualifying offense under § 3559(c)(3)(A)(i). It also is evident that Johnson has

failed to establish a lack of serious bodily injury to the child.[4]

---

[4] Johnson argues that the statements of the sentencing judge do not substitute for evidence. But the sentencing judge was also the trial judge, and therefore the fact finder at trial. And because it is Johnson's burden to show that the offense did not involve a dangerous weapon or serious bodily injury, any lack of or deficiency in the evidence on these matters simply works to his detriment.

Because the instant conviction and the 1997 Kansas conviction both qualified

as "serious violent felonies," and were not non-qualifying felonies, the district court

did not err in sentencing Johnson to life imprisonment under § 3559(c)(2).

## III

The judgment of the district court is affirmed.

Entered for the Court


Mary Beck Briscoe
Chief Judge