FILED
United States Court of Appeals
Tenth Circuit

November 16, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

RICHARD JENKS, JR.,

    Defendant - Appellant.

No. 16-4119
(D.C. No. 2:15-CR-00072-CW-EJF-1)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **HOLMES**, and **BACHARACH**, Circuit Judges.
_____

    A jury convicted Richard Jenks Jr. of multiple counts of sexually abusing his minor stepdaughter. Jenks now appeals his conviction and sentence. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

    After marrying Jenks, a member of the Ute Tribe, Elizabeth Dini sent her daughter, D.W., to live with her maternal grandparents. At 8 years old, D.W.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

returned to live with her mother and Jenks. By that time, the couple had several children in common.

Just before D.W. turned 12, Jenks propositioned her for oral sex in exchange for an iPod. Over the next five years, the frequency and content of Jenks' sexual abuse escalated to include anal and vaginal sex, often in exchange for gifts. D.W. eventually reported the abuse to her mother, who notified the authorities.

Jenks was tried on one count of aggravated sexual abuse of a child within Indian Country in violation of 18 U.S.C. §§ 1153(a), 2241(c), and two counts of sexual abuse of a minor within Indian Country in violation of 18 U.S.C. §§ 1153(a), 2243(a). At trial, the defense attacked the government's evidence by questioning its investigative and testing methods. In response, the district judge submitted the following instruction to the jury:

> You have heard some evidence about searches conducted by law enforcement officers in connection with this case. The lawfulness or legality of a search conducted by law enforcement is a matter for the court and is not a factor that should in any way enter your deliberations. All of the evidence recovered in this case was collected pursuant to a lawful search.
>
> You have also heard testimony as to the manner in which the government conducted its investigation in this case including certain investigative methods or techniques that were used and certain investigative methods or techniques that were not used. In attempting to prove its case, the government is under no obligation to use all of the investigative methods that are available to it or use any particular method. The question is whether the evidence presented is sufficient to convince you beyond a reasonable doubt of the defendant's guilt.

Jenks objected to this instruction, arguing that it "relieve[d] the government of [its] burden" and "negate[d] a defensive argument of reasonable doubt because

2

technique[s] were not used."  He proposed adding a final line to the instruction: "However, if the investigative methods, equipment, or techniques that were used or not used leave you with a reasonable doubt as to the guilt or innocence of the defendant, then you must find him not guilty of the charge(s)."  The district court overruled the objection and gave the instruction reproduced above.  Defense counsel nevertheless addressed the government's investigative techniques and methods in his closing argument before the jury.

The jury returned a guilty verdict on all three counts.  The district court sentenced Jenks to the statutory-minimum sentence of 30 years' imprisonment, followed by a lifetime of supervised release.  In conjunction with the supervised release, the court imposed the following restrictions:

> The defendant is restricted from contact with individuals under the age of 18 without adult supervision except as approved by the probation office.  The defendant shall abide by the following occupational restrictions: Any employment shall be approved by the probation office.  If third-party risks are identified, the probation office is authorized to inform the defendant's employer of his status.[1]

Jenks timely appealed.

## II

Jenks first challenges the district court's investigative-techniques jury instruction.  He argues that, by prefacing its investigative-techniques instruction with a statement that all searches were lawful and all evidence lawfully obtained, the court

---

[1] For convenience, we refer to the first condition as the "associational restriction" and the second set of conditions as the "occupational restrictions."

accorded too much deference to the government, inhibiting the jury's ability to consider law enforcement neglect.

## Jury Instruction

"We review a district court's decision on whether to give a particular jury instruction for abuse of discretion," United States v. Sorensen, 801 F.3d 1217, 1228 (10th Cir. 2015) (quotation omitted), but "[w]e review de novo whether jury instructions, as a whole, correctly state the law and provide the jury with an understanding of the issues," United States v. Little, 829 F.3d 1177, 1181 (10th Cir. 2016). We will reverse only when we have "substantial doubt that the jury was fairly guided." United States v. Smith, 13 F.3d 1421, 1424 (10th Cir. 1994) (quotation omitted).

Jenks concedes that we have previously affirmed some of the language included in the district court's jury instructions. In United States v. Johnson, 479 F. App'x 811 (10th Cir. 2012) (unpublished), for example, we held that the following instruction accurately stated the law and "did not prevent the jury from considering the extent of the government's investigation":

> You have heard testimony as to the manner in which the government conducted its investigation in this case including certain investigative methods or techniques that were used and certain investigative methods or techniques that were not used. In attempting to prove its case, the government is under no obligation to use all of the investigative methods that are available to it or use any particular method. The question is whether the evidence presented is sufficient to convince you beyond a reasonable doubt of the defendant's guilt.

Id. at 817. The difference in this case, Jenks contends, is that this language was preceded by an additional instruction, which suggested that "the actions of law enforcement officers were correct and lawful," thus misleading the jury as to its ability to "consider[] any police neglect or failure."

But Jenks' argument exaggerates the nature of the district court's instruction. The instruction did not "bless[] the actions of law enforcement" or direct the jury to "wholly disregard . . . inadequacies" in the investigation; it merely informed the jury that the lawfulness of a search is a matter for the court and that the government may choose its investigative techniques. This is an accurate statement of the law. See United States v. Morgan, 855 F.3d 1122, 1125 (10th Cir. 2017) ("The ultimate determination of the reasonableness of a search and seizure under the Fourth Amendment is a question of law . . . ."). Although Jenks nevertheless contends that the instruction was misleading when considered as a whole, we are not persuaded that the confluence of these independently correct statements of law misled the jury as to "the relevant standards and factual issues in the case." United States v. Alexander, 817 F.3d 1205, 1210 (10th Cir. 2016). Accordingly, we detect no abuse of discretion in the district court's decision to give the investigative-techniques instruction.

### Supervised Release Conditions

Jenks next argues that the district court erred in imposing the associational and occupational conditions on his supervised release because the conditions improperly delegate to the probation office the judicial authority to impose punishment. He also argues that the district court erred in failing to support the occupational condition of

5

supervised release with required fact-finding. Because he did not raise these objections in the district court, we review the release conditions for plain error. "Under this demanding standard, he must demonstrate: (1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights." United States v. McGehee, 672 F.3d 860, 876 (10th Cir. 2012) (quotation omitted). If he meets these criteria, this court may, in its discretion, reverse the error if "it seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Rosales-Miranda, 755 F.3d 1253, 1258 (10th Cir. 2014) (quotation omitted). When the alleged error is not constitutional, "we will only exercise our discretion when an error is particularly egregious and the failure to remand for correction would produce a miscarriage of justice." United States v. Trujillo-Terrazas, 405 F.3d 814, 820 (10th Cir. 2005) (quotations omitted). When the alleged error is constitutional, we employ a "relaxed standard," "not requir[ing] the exceptional showing required to remand a case of non-constitutional error." United States v. Dazey, 403 F.3d 1147, 1178 (10th Cir. 2005).

### 1. Associational Condition

Jenks argues that the supervised release condition restricting his contact with minor children without adult supervision is an improper delegation of judicial authority because the probation office is left to approve all aspects of the adult-supervised contact. "It is well established that probation officers have broad authority to advise and supervise probationers," but "Article III prohibits a judge from delegating the duty of imposing the defendant's punishment to the probation

6

officer." United States v. Mike, 632 F.3d 686, 695 (10th Cir. 2011) (alteration and quotation omitted). Delegations of "ministerial acts or support services related to the punishment imposed . . . are permissible," while "those that allow the officer to decide the nature or extent of the defendant's punishment" are not. Id. "This inquiry focuses on the liberty interest affected by the probation officer's discretion." United States v. Bear, 769 F.3d 1221, 1230 (10th Cir. 2014). "Conditions that touch on significant liberty interests are qualitatively different from those that do not." Id. (quotation omitted).

We conclude that the associational supervised release condition was not plain error, because it is not plain or obvious that the condition affects a significant liberty interest. Jenks argues that it does because it could prohibit all contact with children, including family members. He does not, however, cite any authority supporting the idea that he has a significant liberty interest in associating with any minor child to whom he is related, regardless of custodial status or affinity. Though Mr. Jenks might be able to assert a significant liberty interest in the care, custody, and control of his own or other children with whom he has a custodial relationship, see Troxel v. Granville, 530 U.S. 57, 65-66 (2000), any such relationship after his 30-year prison sentence ends is very unlikely.

It is possible that Jenks may have minor-child relatives (like grandchildren) when he begins his term of supervised release, but it is not clear that a non-custodial relationship with a minor relative entails a significant liberty interest. See United States v. White, 782 F.3d 1118, 1140-41 (10th Cir. 2015) (discussing in dicta the lack

7

of authority indicating a significant liberty interest in a non-custodial relationship with a minor-child relative). Jenks cites no authority for the proposition that he has a significant liberty interest in familial association with children with whom he has no custodial relationship. This lack of authority precludes a finding of plain error. Because an improper delegation exists only where a significant liberty interest is affected by the delegation, and because it is not plain or obvious that Mr. Jenks has a significant liberty interest in a non-custodial relationship with any as-yet-to-be-born minor child relative, it was not plain error for the district court to impose this particular associational condition under the facts of this case.

## 2. Occupational Condition

The government concedes both that the district court obviously erred in assessing the occupational restrictions without retaining ultimate authority over the conditions and that it was obvious error to impose the occupational restrictions without factual findings. It argues, however, that Mr. Jenks has not shown his substantial rights were affected by these errors and that this court should decline to exercise its discretion to correct the errors.

In imposing conditions of supervised release under 18 U.S.C. § 3563(b)(5), district courts may require that a defendant "refrain . . . from engaging in a specified occupation, business, or profession bearing a reasonably direct relationship to the conduct constituting the offense, or engage in such a specified occupation, business, or profession only to a stated degree or under stated circumstances." And U.S.S.G.

8

§ 5F1.5(a) states that, before imposing such an occupational restriction, the district court must first determine that:

> (1) a reasonably direct relationship existed between the defendant's occupation, business, or profession and the conduct relevant to the offense of conviction; and

> (2) imposition of such a restriction is reasonably necessary to protect the public because there is reason to believe that, absent such restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted.

To show an effect on his substantial rights, Mr. Jenks "must show a reasonable probability that, but for the error claimed, the result of the proceedings would have been different." United States v. Gonzalez-Huerta, 403 F.3d 727, 732 (10th Cir. 2005) (en banc) (quotation omitted). Mr. Jenks maintains that "the result of his sentencing necessarily would have been different if the court had not granted judicial authority to the probation office." "That alone," he contends, "shows a reasonable probability of a different result." "Under plain error review, we may vacate special conditions of supervised release only if the record reveals no basis for the conditions. If the record reveals a basis, there is no reasonable probability that but for the error the defendant's sentence would be different and thus the proceeding's fairness was not impacted." United States v. Barela, 797 F.3d 1186, 1192 (10th Cir. 2015).

The clear language of § 3563(b)(5) and the Guidelines requires a "reasonably direct relationship" between the occupational restriction and the conduct relevant to the offense of conviction. United States v. Erwin, 299 F.3d 1230, 1232 (10th Cir. 2002); see also United States v. Wittig, 528 F.3d 1280, 1288 (10th Cir. 2008)

9

(discussing the necessary conditions to support occupational restrictions). In this case, the occupational restrictions required Jenks' probation officer to approve any employment and authorized the officer to disclose his status to an employer if the officer identified "third-party risks." Neither the district court nor the probation office's presentence investigation report specified a reason for imposing these restrictions.

The government argues that Jenks' position on the tribe's business committee was directly related to the conduct of his offense, because he instructed D.W. to say the rumors of his conduct were politically motivated. Despite the district court's failure to make the necessary factual findings, this direct relationship remains fairly clear. Still, direct relationship is only half of the inquiry. The Guidelines also required the district court to determine that the occupational restriction was "reasonably necessary to protect the public because [otherwise] the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted." U.S.S.G. § 5F1.5(a)(2). In other words, there must be something in the record to justify the probation office's authority to approve not only future political office Jenks may hold, but any job he may hold.

On this second prong, the occupational restrictions are entirely too broad to prevent Jenks from engaging in similar unlawful conduct, because they require him to get approval to engage in any work, even that which would not provide an opportunity for him to engage in similar unlawful conduct. Thus, because "the

10

record reveals no basis" for the occupational restrictions, Jenks has established a violation of his substantial rights. <u>Barela</u>, 797 F.3d at 1192.

The imposition of special conditions of supervised release without the required findings affects "the fairness, integrity, or public reputation of the proceedings because these conditions were likely more severe than the ones the district court would have imposed had it fulfilled its obligation to explain its reasoning for imposing any special conditions." <u>United States v. Burns</u>, 775 F.3d 1221, 1225 (10th Cir. 2014) (quotation omitted). We therefore reverse.

### III

For the foregoing reasons, we conclude that the district court properly instructed the jury, that the district court's delegation to the probation office in the associational condition was not plain error, and that there was plain error both in the imposition of the occupational condition without the required factual findings and in delegation with regard to the occupational restrictions. As a result, we affirm both the conviction and the sentence with regard to the associational condition on supervised release. We vacate the sentence with regard to the occupational condition on supervised released and remand for the district court to make factual findings and conduct resentencing consistent with this order and judgment.

Entered for the Court

Carlos F. Lucero
Circuit Judge

11

*United States v. Jenks*, No. 16-4119
**HOLMES**, J., concurring:

I join the majority's order and judgment in full, except for its disposition of the jury-instruction issue. There, I conclude that, even if the district court committed instructional error, that error was harmless on the facts of this case.