The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
November 23, 2022

**2022COA134**

**No. 2019CA0180, *People v. Salah* — Criminal Law —
Sentencing — Probation; Constitutional Law — Right of
Familial Association**

A division of the court of appeals holds that a condition of

probation that barred a probationer from contact with children

other than his own did not violate the probationer's constitutional

right of familial association. The probationer had been convicted of

sexual exploitation of a child and violated the condition of his

probation by residing with his sister and minor nephew. The

probationer did not allege or establish any parental role as to his

nephew, which makes this case different from *People v. Cooley*,

2020 COA 101, on which the probationer relies.

COLORADO COURT OF APPEALS     **2022COA134**

Court of Appeals No. 19CA0180
Adams County District Court No. 17CR4392
Honorable Roberto Ramirez, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Abdullahi Salah,

Defendant-Appellant.

ORDERS AFFIRMED

Division P
Opinion by JUDGE J. JONES
Martinez* and Graham*, JJ., concur

Announced November 23, 2022

Philip J. Weiser, Attorney General, Katharine Gillespie, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, John Plimpton, Lead Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2022.

¶ 1     Defendant, Abdullahi Salah, appeals the trial court's order revoking his sentences to sex offender intensive supervision probation (SOISP) and the court's order resentencing him to SOISP with the same conditions.  He contends that the two probation conditions he was found to have violated infringe on his constitutional right to familial association by prohibiting him from contacting or living with a minor family member.  Salah thus challenges the revocation of his SOISP sentences based on his violation of these conditions and the imposition of those same conditions on his new SOISP sentences.

¶ 2     Because we conclude that the record doesn't show that Salah's right to familial association was implicated, we affirm the trial court's orders revoking his SOISP sentences and re-imposing SOISP with the same conditions.

I.     Background

¶ 3     The evidence introduced at trial showed that Salah electronically contacted and communicated with the then-fifteen-year-old victim and that, on the evening in question, Salah picked

1

up the victim from her home, drove her to a park, sexually assaulted her, and took pictures of her breasts.

¶ 4     A jury found Salah guilty of second degree kidnapping, sexual assault, and two counts of sexual exploitation of a child. The trial court sentenced him to concurrent terms on SOISP. The court said that, as part of his probation, Salah could not be around children, but the court also found that he didn't pose a threat to his own children. As now relevant, Salah's probation conditions 3 and 5 prohibited him from contacting or residing with a child under the age of eighteen, except for "children who [we]re [his] siblings or with whom [he] ha[d] a parental role (for example, biological children, adoptive children, or step-children)."

¶ 5     Salah's probation officer later filed a complaint to revoke Salah's SOISP sentences, alleging, among other things, that he had violated conditions 3 and 5 by living with his sister and her infant child. In a "Special Report," the officer said that, at his probation intake appointment, Salah "asked if he could have contact with the children belonging to his children's mother, but because he d[id]

2

not have a parental role with these minors, he was told he could not."

¶ 6     At a revocation hearing, the probation officer testified that she had told Salah that he could not have contact with children who weren't his biological children or children as to whom he had no "parental rights."  She also said that, after she discovered Salah living in a residence with his infant nephew during a home visit, Salah said he thought he could live with family members.  She told him he could have contact only with his own children.  On cross-examination, the probation officer clarified that Salah could have contact with his minor siblings, his minor children, his adopted minor children, or "any children for whom he acted as a father figure."

¶ 7     In contesting the revocation complaint, defense counsel argued, in part, that Salah has a constitutional right to familial association with his nephew and that conditions 3 and 5 violate this right.  Counsel noted that a federal case held that a court can't prohibit a probationer from having contact with his minor biological children and siblings and asserted that "the underlying rationale [of

that case] does argue for an extension of that exception to other familial relationships where the probationer has some sort of parental like role."

¶ 8    Defense counsel claimed that "in this particular community, in this particular family, Mr. Salah would have had a parent like role as it related to his young nephew." Counsel also argued that the underlying facts of Salah's conviction didn't suggest that he poses a risk to his infant nephew.

¶ 9    In rejecting Salah's constitutional challenge to conditions 3 and 5, the trial court considered Salah's cousin's testimony regarding Salah's family but determined that "there [wa]s no evidence before this Court that as it relates to [Salah] and his nephew, that there [wa]s a parental like role." The court noted that the applicable federal cases "made it clear that it would have been [Salah's] burden to demonstrate the nature of the relationship to the children in question."

¶ 10    The trial court then found that Salah had violated conditions 3 and 5, revoked his SOISP sentences, and re-imposed the original

SOISP sentences with the same conditions, plus a ninety-day jail sentence.

## II. Analysis

¶ 11 On appeal, Salah doesn't reassert his argument that a probationer's constitutional right to familial association should extend to a minor family member with whom he has a parental role and that he had such a parental role with his nephew. In fact, he appears to concede that he doesn't have a parental role with his nephew.

¶ 12 Instead, Salah asserts that the trial court failed to make certain required findings before imposing conditions 3 and 5, which, he says, infringe on his right to reside with his sister and nephew. He makes this claim without regard to whether he has any particular relationship with them and claims this right is implied in his right of familial association. He relies on *People v. Cooley*, 2020 COA 101, in which a division of this court concluded that "conditions of probation that infringe on a defendant's fundamental constitutional rights must be supported by a specific finding that (1)

compelling circumstances require their imposition and (2) less restrictive means are not available." *Id.* at ¶ 36.

¶ 13    But *Cooley* is distinguishable from this case in two pertinent ways.

¶ 14    First, the defendant in *Cooley* was convicted of sexually assaulting an adult victim, while Salah was convicted of sexually assaulting a minor. *Id.* at ¶ 2. "When a defendant has committed a sex offense against children or other vulnerable victims, general restrictions on contact with children ordinarily do not involve a greater deprivation of liberty than reasonably necessary." *United States v. Bear*, 769 F.3d 1221, 1229 (10th Cir. 2014).

¶ 15    Second, *Cooley* involved the imposition of SOISP conditions that assertedly infringed on the probationer's right to familial association with his own children. *Cooley*, ¶¶ 1, 5, 7. In the context of a parent-child relationship, the right to familial association is fundamental and can be infringed only upon a finding of compelling circumstances. *Id.* at ¶¶ 22, 25, 28, 30, 36; *see also United States v. Burns*, 775 F.3d 1221, 1222-25 (10th Cir. 2014); *United States v. Lonjose*, 663 F.3d 1292, 1302-03 (10th Cir. 2011);

*United States v. Smith*, 606 F.3d 1270, 1283-84 (10th Cir. 2010); *United States v. Voelker*, 489 F.3d 139, 153-55 (3d Cir. 2007); *United States v. Davis*, 452 F.3d 991, 994-96 (8th Cir. 2006); *United States v. Loy*, 237 F.3d 251, 269 (3d Cir. 2001); *United States v. Edgin*, 92 F.3d 1044, 1049 (10th Cir. 1996); *People v. Forsythe*, 43 P.3d 652, 653-55 (Colo. App. 2001).  Indeed, "restrictions on a defendant's contact with [their] own children are subject to stricter scrutiny."  *Bear*, 769 F.3d at 1229.

¶ 16     But, "[a]lthough the [United States] Supreme Court has . . . recognized familial rights in persons other than parents, the parameters of that interest are less well-defined."  *United States v. White*, 782 F.3d 1118, 1139 (10th Cir. 2015).  While a probation condition "may only infringe on the parental right to familial association if there are compelling circumstances, a non-custodial [individual's] right to familial association is entitled to less constitutional protection."  *Id.* at 1140.

¶ 17     The probationer bears the burden of demonstrating the nature of his relationship with a family member who isn't his child.  *Id.* Upon consideration of the nature of the relationship and "the degree

to which that relationship resembles a parental one," the probationer's right to familial association should be afforded "a level of constitutional protection directly proportional to the significance of that liberty interest." *Id.* at 1140-41.

¶ 18 Accordingly, we conclude that *Cooley*'s requirement of a "compelling circumstances" finding before imposing a condition that infringes on a probationer's right to familial association doesn't imply a right to live with family members without regard to the nature of the relationship. *See id.* at 1141 (remanding the case for the district court to enter "specific findings justifying any conditions of supervised release that infringe on a protected right of familial association" but requiring "express findings of compelling circumstances" only "[i]f a parent-like right is impacted"); *Bear*, 769 F.3d at 1229 ("[S]pecial conditions that interfere with the [parental] right of familial association can do so only in compelling circumstances . . . ." (quoting *Smith*, 606 F.3d at 1284)); *Trujillo v. Bd. of Cnty. Comm'rs*, 768 F.2d 1186, 1189 (10th Cir. 1985) ("[T]he parental relationship may warrant the greatest degree of protection

and require the state to demonstrate a more compelling interest to justify an intrusion on that relationship . . . .").

¶ 19    *Melnick v. Raemisch*, Civ. A. No. 19-cv-00154, 2021 WL 4133919 (D. Colo. Sept. 10, 2021), is more analogous to this case than is *Cooley*. In that case, a parolee filed a federal civil action challenging the constitutionality of conditions of his release from prison on his Colorado sentence precluding contact with minor family members, including his nephew. *Id.* at *1. In dismissing the action, the federal district court concluded that the parole conditions didn't infringe on the parolee's right to familial association because he "ha[d] not alleged any type of parental or custodial arrangement with his nephew or any other minors in his family, and d[id] not describe his relationship with them." *Id.* at *11. The court also noted that "a sex offender['s] contact with children is generally not authorized absent a close familial relationship, *White*, 782 F.3d at 1138-40, and [the parolee] ha[d] not alleged any facts from which the Court c[ould] infer such a close familial relationship with the minors." *Id.* Finally, the court determined that "[t]he prohibition on contact with minors furthers

9

the legitimate interests of the state in rehabilitation and protecting the public from sex offenders, particularly, vulnerable minors who are more at risk"; that the parolee "ha[d] not plausibly pled allegations from which the Court c[ould] infer that [the parole conditions] d[id] not serve those interests"; and that, therefore, the parolee's "familial interest in associating with his nephew and other minors in his family [wa]s outweighed by the state's interest in protecting health and safety." *Id.* (footnote omitted).

¶ 20    *United States v. Jenks*, 714 F. App'x 894 (10th Cir. 2017), is also instructive.  The defendant challenged a parole condition that restricted contact with his minor family members.  *Id.* at 896-87, 898.  In rejecting this challenge, the court concluded that, "[t]hough [the defendant] might be able to assert a significant liberty interest in the care, custody, and control of his own or other children with whom he has a custodial relationship," "[h]e d[id] not . . . cite any authority supporting the idea that he ha[d] a significant liberty interest in associating with any minor child to whom he is related, regardless of custodial status or affinity" or that he had "a

10

significant liberty interest in familial association with children with whom he has no custodial relationship." *Id.* at 898-99.

¶ 21     Lastly, in *United States v. Pacheco-Donelson*, 893 F.3d 757 (10th Cir. 2018), the defendant argued that a parole condition infringed on his right to familial association because it precluded him from associating with his two foster brothers. *Id.* at 758-59. The court noted that, even assuming the right to familial association could apply to foster siblings, "this theory would require proof, for the constitutional protection of familial relationships stems from 'the emotional attachments that derive from the intimacy of daily association.'" *Id.* at 760 (quoting *Smith v. Org. of Foster Fams. for Equal. & Reform*, 431 U.S. 816, 844 (1977)); *see Smith*, 431 U.S. at 844 (while a familial relationship also stems from a "blood relationship," such fact is not dispositive). In concluding that the district court didn't err by imposing the parole condition, the court determined that the defendant "provided no evidence of a close familial relationship between himself and the two foster brothers." *Pacheco-Donelson*, 893 F.3d at 760.

11

¶ 22    In light of the above authority and the record, we conclude that conditions 3 and 5 didn't infringe on Salah's right to familial association. Salah admittedly had no parental or custodial role with his nephew, and he otherwise failed to demonstrate the nature of his relationship with his sister and nephew. *See White*, 782 F.3d at 1139-41; *see also Est. of B.I.C. v. Gillen*, 710 F.3d 1168, 1175 (10th Cir. 2013) (When extending the due process right to familial association to grandparents, "courts often consider whether the grandparents are 'custodial figure[s]' or 'acting in loco parentis.'" (quoting *Rees v. Off. of Child. & Youth*, 744 F. Supp. 2d 434, 451 (W.D. Pa. 2010))); *Johnson v. City of Cincinnati*, 310 F.3d 484, 501 (6th Cir. 2002) (The plaintiff had a fundamental freedom of association right to participate in the upbringing of her grandchildren where she did more than visit and was "an active participant in the lives and activities of her grandchildren.").

## III.    Conclusion

¶ 23    The orders revoking Salah's SOISP sentences and re-imposing SOISP sentences are affirmed.

JUSTICE MARTINEZ and JUDGE GRAHAM concur.